b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

MOHAMMAD SHAFI NABIZADA        CIVIL DOCKET NO. 1:25-CV-01256
#A244-528-476,        SEC P
Plaintiff

VERSUS        JUDGE DRELL

U S IMMIGRATION & CUSTOMS        MAGISTRATE JUDGE PEREZ-MONTES
ENFORCEMENT, ET AL,
Defendants

---

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner Mohammad Shafi Nabizada ('Nabizada'). ECF No. 1. The Government filed a response to the Petition, to which Nabizada filed a reply. ECF Nos. 14 & 18.

Because there is no substantial likelihood of Nabizada's removal in the reasonably foreseeable future, IT IS RECOMMENDED that the Petition (ECF No. 1) be GRANTED, and the Department of Homeland Security, U.S. Immigration and Customs Enforcement, and their officers, agents, and employees be ORDERED TO RELEASE Petitioner Mohammad Shafi Nabizada from custody as soon as practical, and under appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3) and (a)(6), if necessary, but in no event later than three (3) business days after a Judgment is signed. In the interim, it is expected that Nabizada will neither be transferred nor removed pending a final judgment.

I.    <u>Background</u>

On or about May 10, 2024, Nabizada, an Afghan citizen, entered the United States without a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document. ECF No. 14-1. Nabizada was taken into custody on May 10, 2024. ECF Nos. 1 at 4 & 14 at 1. On July 7, 2024, the Department of Homeland Security ('DHS') sent Nabizada a Notice to Appear, charging him as removable due to his failure to possess a valid immigrant visa, border crossing identification card, or reentry permit" ECF No. 14-1" at 1.

On January 22, 2025, Nabizada was ordered removed to Turkey or, in the alternative, Afghanistan. ECF No. 14-2. On February 18, 2025, the Government requested travel documents from the Embassy of Afghanistan. ECF No. 14-3 ¶ 6. On March 6, 2025, the Government sent Form 1-241 and a Türkiye identification document to the Consulate of Türkiye. *Id.* ¶ 7. On May 21, 2025, the Government requested an Afghanistan Transportation from the Embassy of Afghanistan. *Id.* ¶ 9. On July 10, 2025, the Government received a travel itinerary, and Nabizada was scheduled to depart on July 29, 2025.[1] *Id.* ¶ 10. Nabizada was transferred to a facility in McAllen, Texas, then to a facility in Port Isabel, Texas, before finally returning to Winn Correctional Center on July 23, 2025. *Id.* ¶¶ 11-13.

On August 28, 2025, Nabizada filed the instant Petition. Nabizada argues he has "been detained by ICE beyond the removal period authorized by statute," and

---

[1] The Government does not clarify to which country Nabizada was scheduled to depart.

"ICE is not likely to remove [him] in the near future." ECF No. 1 at 6. Nabizada additionally argues ICE is depriving him of his right to liberty under the Fifth Amendment because he has "been detained by ICE for a prolonged period." *Id.* Nabizada moves the Court to order "ICE to deport [him] immediately or release [him] from" custody. *Id.* at 7. In a subsequent filing, Nabizada also appears to seek an order prohibiting the Government from removing him to Afghanistan. ECF No. 4 at 2. The Government argues the Court does not have jurisdiction because Nabizada "claims arise from the execution of a final removal order pursuant to 8 U.S.C. § 1252(g)." ECF No. 14 at 1. The Government further argues Nabizada "provides no evidence that his removal is not reasonably foreseeable" and "fails to show his continued detention arises to a statutory or constitutional violation." *Id.* at 2.

The Court convened oral argument on February 19, 2026. ECF No. 22. The parties provided the status of removal proceedings, and the Court ordered the parties to submit supplemental briefing that includes the latest update regarding Nabizada's travel documents. *Id.* In this supplemental briefing, the Government represents "that as of February 25, 2026, the agency is still awaiting the travel letter previously requested from Afghanistan that is required for Petitioner's removal." ECF No. 25 at 1. The Government further represents that it must "restart the process of requesting the travel documents from Turkey" because of Nabizada's "recent transfer to a

Houston facility . . . ."[2] *Id.* The Government was unable to confirm whether Afghanistan or Turkey is currently accepting removals.[3] *Id.*

## II.   Law and Analysis

This Court has jurisdiction to consider Nabizada's challenge to his continued post-removal order detention. *See Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *6 (S.D. Tex. Jan. 28, 2026) ("Mr. Nguyen contests only his post-removal-period detention . . . rather than any aspect of his underlying removal order or the decision by DHS to execute it. Thus, . . . the Court retains jurisdiction to review his detention."); *Kokoreva v. Unknown Party*, No. 25-CV-1700, 2025 WL 2981626, at *2 (N.D. Tex. Oct. 7, 2025) ("[T]he Court retains jurisdiction to review a noncitizen's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition.") (quotation omitted), *report and recommendation adopted*, No. 25-CV-1700, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025); *Yousef v. Warden Richwood Corr. Ctr.*, No. 25-CV-1947, 2025 WL 3784489, at *2 (W.D. La. Dec. 10, 2025), *report and recommendation adopted*, No. 25-CV-1947, 2026 WL 19378 (W.D. La. Jan. 2, 2026). Because the Court has jurisdiction to consider Nabizada's claims, it turns now to the merits.

After an alien is ordered removed, the Government has 90 days with which to effectuate the removal. *See* 8 U.S.C. § 1231(a)(1)(A). However, § 1231 permits detention beyond 90 days, for a period reasonably necessary to bring about that

---

[2] This statement raises questions regarding whether the process needed to be started after Nabizada was transferred to McAllen and Port Isabel and if the Government failed to do so.

[3] This statement is contrary to representations made at oral argument.

alien's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In fact, detention for up to six months is "presumptively reasonable." *Id.* Afterward, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release him. *Id.*; *see also* 8 C.F.R. § 241.13 (setting forth the *Zadvydas* procedures). The petitioner bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *See Andrade v. Gonzales*, 459 F.3d 538 (5th Cir. 2006). The alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-CV-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

Here, a final order of removal was entered on January 22, 2025. More than six months have passed since that order was issued. Thus, Nabizada has been detained beyond the presumptively reasonable period, and the presumption of reasonableness no longer applies. *See Shengelia v. Ortega*, 25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025).

Nabizada has satisfied his initial burden of demonstrating that there is no likelihood of removal in the reasonably foreseeable future. The Government has now detained Nabizada for more than twenty-one months—approximately 655 days—since he first presented himself at the border on May 10, 2024, and for more than twelve months after his removal order became final on February 22, 2025. He has never been charged with, much less convicted of, any crime; he appeared at the

border without incident; he served alongside United States military forces; and he asserts here basically two correlated requests for relief: to be released from detention and not to be deported to Afghanistan.

On this record, and under these very unusual circumstances, the Court can discern no legitimate reason to extend his detention further. At issue are certain matters of immigration law and policy that—confounding though they may be—fall outside the Court's jurisdiction. Nabizada's request for an order precluding his removal to Afghanistan is one such matter.[4] But his rights under the United States Constitution are not.

Although the Government has pursued travel documentation to Turkey and Afghanistan and has, on one occasion, scheduled a removal flight, those efforts have not produced a viable path to effectuate removal. The most recent declaration, filed on February 25, 2026, confirms that the Afghanistan transportation letter requested in May 2025 remains pending and that the process of requesting Turkish travel documents must be effectively "restarted." In fact, the Government cannot confirm that either Afghanistan or Turkey is currently even accepting removals.

Whatever latitude § 1231(a)(6) and executive policy may afford for temporary, good-faith efforts to secure travel documents, they do not permit the Government to

---

[4] The Court's jurisdiction is limited to considering Nabizada's challenge to his continued detention, and, as such, it cannot order that Nabizada be removed to a specific country. Nevertheless, the Court finds it both abhorrent and unpatriotic to send Nabizada, a person who joined the United States Army in its fight against the Taliban and other Afghan terrorist groups, to a country where he fears being tortured and killed.

hold anyone on American soil and in civil detention for nearly two years while it waits on speculative, undefined, and shifting possibilities of removal to countries whose willingness to receive him remains uncertain. *See Zadvydas*, 533 U.S. at 689–701. If administrative law and executive policy—confounding though they may be— somehow tolerate this continued and indefinite detention, the United States Constitution—which protects any individual present on American soil—does not.

On this record, Nabizada has plainly provided good reason to believe there is no significant likelihood of his removal in the foreseeable future, and the Government has failed to meet its burden to refute that assertion. Though the Government maintains it "has acted swiftly and diligently and is simply waiting for responses from the receiving countries," ECF No. 14 at 6, a final order of removal has been in effect for over twelve months with no end in sight. These are precisely the types of circumstances foreclosed by *Zadvydas*. Habeas relief is therefore warranted.

III.    Conclusion

For well over a century, the Supreme Court has clearly and consistently held that Constitutional rights extend to all persons present within the territorial jurisdiction of the United States, regardless of citizenship. *See, e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). Applied to civil immigration detention, that principle means that noncitizens physically present here—like citizens—may not be confined indefinitely, subject to the limits articulated in *Zadvydas*. *See,* 533 U.S.at 689–96. The Fifth Circuit has also made clear—both before and after *Zadvydas*—that noncitizens physically present in this country, even if removable, remain "persons" entitled to due process limits on immigration detention. *See Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). And this Court

7

has done the same. *See, e.g., Guobadia v. U.S. Immigration & Customs Enf't*, No. 1:25-CV-00659, 2025 WL 1659237, at *1–2 (W.D. La. June 10, 2025).

Here, the Government has pursued travel documents from Turkey and Afghanistan and has, at times, even scheduled removal flights. None of those efforts has produced a viable path to effectuate Petitioner's removal in the reasonably foreseeable future to either country. In fact, the most recent declaration confirms that a May 2025 travel document request to Afghanistan remains pending, and that, for equally confounding reasons, the process of requesting Turkish travel documents may need to be "restarted" due to Nabizada's transfer to a Houston facility. In fact, the Government cannot confirm that either Afghanistan or Turkey is currently accepting removals at all.

It must be stated that the circumstances underlying Petitioner's detention are particularly confounding.[1] But those circumstances are not dispositive in this lawsuit, and the Court's decision here neither rests upon nor disturbs the underlying immigration proceedings. Rather, the Court finds that Petitioner is entitled to habeas relief in the form of release from detention. Whatever latitude § 1231(a)(6) affords for temporary, good-faith efforts to secure travel documents to properly remove noncitizens if warranted, it does not permit the Government to civilly detain anyone on American soil for nearly two years while awaiting speculative, undefined, and shifting possibilities of removal to countries whose willingness and ability to receive him remain uncertain. *See Zadvydas*, 533 U.S. at 689–701. Some combination of administrative law and executive policy may well have once

---

[1] Nabizada has now been detained by the Government for more than twenty-one months—approximately 655 days—since he first presented himself at the border on May 10, 2024, and for more than twelve months after his removal order became final on February 22, 2025. He has never been charged with or convicted of any crime. He presented himself at the border without attempting to evade or resist U.S. officials. And he did so after apparently serving alongside United States military forces in Afghanistan.

permitted, if not sanctioned, Petitioner's continued detention. The United States Constitution no longer does.

Because the record establishes that there is no substantial likelihood of Nabizada's removal in the reasonably foreseeable future, IT IS RECOMMENDED that the Petition for Writ of Habeas Corpus (ECF No. 1) be GRANTED, and the Department of Homeland Security, U.S. Immigration and Customs Enforcement, and their officers, agents, and employees, be ORDERED TO RELEASE Petitioner Mohammad Shafi Nabizada from custody as soon as practical, and under appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3) and (a)(6), if necessary, but in no event later than three (3) after a Judgment adopting this ruling is signed. In the interim, it is expected that Nabizada will neither be transferred nor removed pending a final judgment.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), IT IS FURTHER ORDERED THAT, given the unique circumstances of this case, any objections to this Report and Recommendation be filed within a truncated timeline – on or before Wednesday, March 4, 2026.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, February 27, 2026.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

9